**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

GEORGE ZAVALA,

Defendant.

Case No.: 2:25-CR-00033-MEMF-1

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 48]**

Before the Court is a Motion to Suppress filed by Defendant George Zavala. Dkt. No. 48. For the reasons stated below, the Motion is GRANTED.

/ / /

/ / /

/ / /

## I. Background

### A. Procedural History

On January 15, 2025, Zavala was indicted for a violation of 18 U.S.C. section 922(g)(1), felon in possession of a firearm and ammunition. Dkt. No. 1. On December 4, 2025, Zavala filed the instant Motion to Suppress Evidence Derived from Illegal Search and Seizure due to Insufficiency of Search Warrant and Lack of Probable Cause. Dkt. No. 48 ("Motion"). There, he requested an evidentiary hearing. *See id.* at 1.[1] On December 19, 2025, the Government filed its opposition. Dkt. No. 55 ("Opp." or "Opposition").[2] In its Opposition, the Government noted its opposition to the holding of an evidentiary hearing. *See id.* at 25. On December 26, 2025, Zavala filed a reply. Dkt. No. 56 ("Reply").

The Court held a hearing on the matter on January 15, 2026. At the hearing, counsel for the Government described what he expected the search warrant affiant (Deputy Richard Velasquez) would testify to if called. The parties advised the Court that no evidentiary hearing was needed. At the parties' request, the Court permitted supplemental briefing. See Dkt. No. 70 ("Gov. Brief"); Dkt. No. 76 ("Gov. Supp. Brief"); Dkt. No. 77 ("Def. Brief").

### B. Facts as Set Forth in Search Warrant Affidavit and Law Enforcement Declaration

During 2021 and 2022, investigators with the Los Angeles County Sheriff's Department ("LASD") conducted an ongoing investigation into potential illegal gambling establishments. Declaration of Deputy Richard Velasquez, Dkt. No. 55-1 ¶ 9 ("Velasquez Decl."). During February 2021, a confidential informant told LASD that Zavala was operating an illegal gambling casino at 2111 San Gabriel Boulevard in Rosemead, California. *Id.* ¶ 12. This informant had, in the past, provided information that led to the successful arrest of several suspects and the recovery of evidence, including evidence related to gambling operations. *Id.* ¶ 14.

---

[1] All citations to the page numbers of docket filings are citations to the pagination imposed on the original documents unless otherwise noted.

[2] This Order refers to the Opposition using the CM/ECF-assigned page numbers.

On February 22, 2021, LASD Deputies Richard Velasquez and J. Morales and served a search warrant at 2111 San Gabriel Boulevard. *Id.* ¶ 13. During the execution of that warrant, LASD recovered six gambling machines and $4,019 in cash. *Id.* Zavala was present during the warrant's service but denied involvement in any illegal gambling operation. *Id.*

Later, a second confidential informant informed LASD that Zavala was leasing two separate apartments. *Id.* ¶ 17. The first was at 301 South Glendora Avenue, Unit 2242, in West Covina, California. *Id.* The second was at 1200 South Figueroa Street, with an unknown unit number, in Los Angeles, California. *Id.* Velasquez used departmental resources to learn that Zavala was listed as the suspect in an assault with a deadly weapon report dated October 10, 2021. *Id.* ¶ 18. The report listed Zavala's address as 1200 South Figueroa Street. *Id.*

On May 19, 2022, Velasquez, along with LASD Deputy Mario Garcia, drove to the building at 1200 South Figueroa Street. *Id.* ¶ 19. The general manager of the building informed the officers that Zavala was a then-current occupant of unit W2726 ("Figueroa Apartment"), on the twenty-seventh floor. *Id.*

On May 23, 2022, Garcia and Velasquez drove to 301 South Glendora Avenue. *Id.* ¶ 20. A leasing office agent confirmed that Zavala was a then-current occupant of unit 2242 ("Glendora Apartment"). *Id.* The leasing office agent advised that a key fob is required to enter the apartment building, and each resident has a key fob. *Id.* The leasing office agent confirmed that, on May 23, 2022, at approximately 1:20 A.M., Zavala's key fob was used for entry into the building from the parking garage. *Id.*

On May 31, 2022, Velasquez and Detective Ivania Farias jointly submitted a sworn search warrant application, including an affidavit, to the Los Angeles County Superior Court. *Id.* ¶ 21. *Id.*; *see also* Declaration of Bert Roughton, Ex. A, Dkt. No. 48-2 ("Search Warrant and Affidavit"). The warrant, which was approved by a judge of the Los Angeles Superior Court, authorized searches of the Figueroa Apartment and the Glendora Apartment. Velasquez Decl. ¶ 21. The warrant further authorized the search of any vehicles on the property, on the street, or in front of or nearby to the identified locations—as long as, prior to the search, the vehicle could be specifically connected to the occupants of the identified locations. *Id.*

The Search Warrant described the property to be seized as follows:

1. Any and all slot machines or devices that are adapted, (whether mechanically, or video operated), or may be readily converted so that as a result of the insertion of money, coin, or other object, or by other means the machine will operate, and by any hazard or chance or outcome of operation unpredictable, the user may receive or become entitled to receive a thing of value or additional chance to use the slot machine gambling device as defined by Penal Code sections 330a, 330b, and 330.1.

2. Any article of personal property tending to establish the identity of persons who have dominion and control over the premises and vehicles to be searched, including all keys to the described location, rent receipts, sales receipts, and articles of personal property tending to show ownership of location. All personal property and documents used as means of identification, including but not limited to driver's licenses, credit cards, passports, social security cards, alien cards, California identifications and photographs relative to the person(s) found at the location.

3. Any and all computer hardware which consists of all equipment which can collect, analyze, create, display, convert, store, conceal or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes (but is not limited to), any mother-boards, any data-processing devices (such as chips, memory typewriters, and self-contained "laptop" or "notebook" computers); internal and peripheral storage devices (such as fixed discs, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, ad optical radars; and related communication devices (such as modems, cables and connections, recording equipment, RAM or ROM units, automatic or speed dialers, programmable mechanisms, or parts that can be used to restrict access to computer hardware such as physical keys and locks).

4. Any and all computer software which consists of any digital information which can be executed by a computer and any of its related components to direct the way they work, including programs to run operating systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communication programs, including software used to test chips and software to direct laser equipment. Software can be stores in electronic, magnetic, optical or other digital form.

5. Any and all computer related documentation describe[d] as written, recorded, printed or electronically stored material, which explains or illustrates how to configure or use computer hardware, software, or other related items.

6. Any and all documents showing assets, including but not limited to business records, and personal records, including invoices of any items shipped to and from the residence, and savings account records, cancelled checks, balance sheets, money or money orders or bank drafts, bank account numbers, safes, bank information, information regarding

safe deposit boxes, U.S. currency, certificates of deposit, money market accounts, stock broker accounts, mutual fund accounts, financial instruments used to deposit or exchange money, any and all financial documents showing a financial money trail.

7. Any and all documents, including business cards, invoices, faxes, identifying contacts and/or customers purchases or sales.

8. Any and all cellular phones, answering machines, facsimile machines, used to facilitate in the commission of the crime under investigation.

9. Any and all printed documents, and digital information which can be executed by a computer and any of its related components to direct the way they work, including programs to run operation systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communication programs.

10. Any paraphernalia associated with illegal gambling or related to this investigation and/or on-going gaming conspiracies linked to this illegal casino, their ownership, associates, clientele lists, or vehicles used during the commission of this sad crime(s).

11. Firearms of any caliber whether illegally or legally owned, any and all ammunition of any caliber. Any firearm components, including but not limited to receipts, holsters, cases, manuals, cleaning or maintenance parts, ammunition, or components of ammunition, photographs depicting said weapons and photographs with persons holding such items.

Search Warrant and Affidavit at 5–7.[3]

On June 1, 2022, at 6:00 AM, LASD deputies, including Velasquez, executed the search warrant at the Glendora Apartment. Velasquez Decl. ¶ 33. There, officers recovered items including three firearms. *Id.* ¶ 36.

## II. **Applicable Law**

The Fourth Amendment protects people and their effects from unreasonable searches and seizures. U.S. Const. amend. IV. "The bulwark of Fourth Amendment protection [] is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). "[A] warrant may not be issued unless probable cause is properly established and the scope

[3] This Order refers to the Search Warrant and Affidavit using the CM/ECF-assigned page numbers.

of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011). These requirements protect persons from indiscriminate rummaging through their personal belongings. *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 857 (9th Cir. 1991) (stating that both the particularity and breadth requirements "prevent[] a 'general, exploratory rummaging in a person's belongings'" (quoting *Andresen v. Maryland*, 427 U.S. 463, 480 (1976))); *see also United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986) (explaining that the Fourth Amendment particularity requirement for a valid warrant "prevents general, exploratory searches and indiscriminate rummaging through a person's belongings."); *United States v. Gomez-Soto*, 723 F.2d 649, 652 (9th Cir. 1984) ("It was, of course, fear of general warrants and indiscriminate rummaging among personal belongings which motivated the adoption of the fourth amendment." (citing *Payton v. New York*, 445 U.S. 57 (1980))). Search warrants should be "interpreted in a common sense and realistic, rather than a hypertechnical, manner." *United States v. Turner*, 770 F.2d 1508, 1510 (9th Cir. 1985).

To establish probable cause, "a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks*, 438 U.S. at 165. The magistrate "must examine the 'totality of the circumstances' set forth in the affidavit to determine whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Ayers*, 924 F.2d 1468, 1478 (9th Cir. 1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The magistrate's finding of probable cause "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). Still, the magistrate must have a "substantial basis" for reaching such a conclusion. *United States v. Moreno*, 758 F.2d 425, 427 (9th Cir. 1985); *Gates*, 462 U.S. at 239 ("An affidavit must provide the magistrate with a *substantial* basis for determining the existence of probable cause . . . ." (emphasis added)). The Supreme Court has cautioned that, while this Court's scrutiny of a supporting affidavit "should not take the form of *de novo* review," it must nevertheless be searching and conscientious. *Gates*, 462 U.S. at 239 (holding that "courts must continue to *conscientiously* review the sufficiency of affidavits on which warrants are issued." (emphasis added)).

To be valid under the Fourth Amendment, a warrant must be sufficiently specific. The Ninth Circuit has explained that this encompasses two distinct requirements—*particularity*, on the one hand, and *breadth*, on the other. *In re Grand Jury Subpoenas*, 926 F.2d at 856–57; *see also United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009) ("[W]e now insist that particularity and overbreadth remain two distinct parts of the evaluation of a warrant for Fourth Amendment purposes . . . .").

To meet the *particularity* requirement of the Fourth Amendment, a "warrant must describe the things to be seized and the place to be searched with particularity." *United States v. Artis*, 919 F.3d 1123, 1129 (9th Cir. 2019). "Particularity is the requirement that the warrant must clearly state what is sought." *In re Grand Jury Subpoenas*, 926 F.2d at 856 (citing *Spilotro*, 800 F.2d at 963).

To meet the *breadth* requirement, on the other hand, "there [must] be probable cause to seize the particular thing named in the warrant." *In re Grand Jury Subpoenas*, 926 F.2d at 857. "Courts have repeatedly invalidated warrants authorizing a search which exceeded the scope of the probable cause shown in the affidavit." *Id.*

Under the exclusionary rule—and unless the good faith exception applies—courts are generally required to suppress evidence obtained from an illegal search. *See United States v. Ngumezi*, 980 F.3d 1285, 1290 (9th Cir. 2020). The good faith exception to the exclusionary rule applies "[w]hen officers act in reasonable reliance on a search warrant issued by a neutral magistrate but ultimately found to be invalid." *United States v. Ramos*, 923 F.2d 1346, 1353 (9th Cir. 1991), *overruled on other grounds by U.S. v. Ruiz*, 257 F.3d 1030, 1031 (9th Cir. 2001)); *see U.S. v. Leon*, 468 U.S. 897, 922-23 (1984). But, "[w]hen a search warrant is facially deficient, the *Leon* exception will not apply to stave off the exclusionary rule." *Ramos*, 923 F.2d at 1353.

In addition, the Ninth Circuit has endorsed the doctrine of severance, permitting a court to strike the invalid portions of a warrant—including those found overbroad—while preserving the valid portions. *SDI Future Health*, 568 F.3d at 707. To apply the doctrine, a court must find that "'identifiable portions of the warrant be sufficiently specific and particular.'" *United States v. Sears*, 411 F.3d 1124, 1130 (9th Cir. 2005) (quoting *United States v. Spilotro*, 800 F.2d 959, 967 (9th Cir. 1986)). It must also compare the "relative size of the valid and invalid portions of the warrant in

determining whether severance is appropriate." *Id.*. The court also typically must determine that the valid categories of items listed in the warrant are the "focus" and constitute the "lion's share." *SDI Future Health*, 568 F.3d at 707; *see also United States v. Gomez Soto*, 723 F.2d 649, 654 (9th Cir. 1984) (applying severance doctrine where only one of thirteen categories in the warrant was found invalid). A district court should not sever where the valid portions are "a relatively insignificant part" of an otherwise invalid warrant. *In re Grand Jury Subpoenas*, 926 F.2d at 858 (quoting *Spilotro*, 800 F.2d at 967).

## III. Discussion

For the reasons discussed below, the Court finds that the affidavit did set forth probable cause to search the Location, the search warrant violated the breadth requirement by including broad categories of items not sufficiently tied to probable cause, the good faith exception does not apply, and severance is not available. Accordingly, the Motion is GRANTED.

### A. The Affidavit Set Forth Probable Cause to Search the Location.

Zavala argues that the search warrant lacked probable cause because there was no sufficient nexus between the alleged wrongdoing and the Location. Motion at 9. The Court finds that there was a sufficient nexus as established in the supporting affidavit.

First, Velasquez adequately described his experience investigating numerous illegal gambling operations in the "Background of Affiant" section. Search Warrant and Affidavit at 9 ("Particularly related to Illegal Casinos, I have investigated approximately 40 illegal gambling investigations[4] and also led a robbery investigation of a 'Cyber Café' which was operating as an illegal Casino."). Next, he asserted in the "Statement of Probable Cause" that based upon his knowledge and experience, the evidence at issue could be found at a residence. *Id.* at 18 ("Based on my knowledge and experience investigating illegal gambling operations, I know that it is common for operators of illegal gambling casinos to store the following but not limited to, large amounts of U.S. Currency, pay/owe ledgers, gambling machine parts and control devices, firearms to protect

---

[4] The Court understands that this was either meant to state that the officer has investigated 40 illegal gambling operations or that he has participated in approximately 40 illegal gambling investigations. In any event, this experience is sufficient.

their proceeds from the illegal gambling operations, computers, Ipads and cellular phones that assist in their operation *at their residence*." (emphasis added)).

The magistrate who signed the warrant was entitled to rely on these assertions in the absence of anything calling them into question. *See United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) ("An affidavit must recite underlying facts so that the issuing judge can draw his or her own reasonable inferences and conclusions; it is these facts that form the central basis of the probable cause determination."); *see also* 14 Wright & Miller's Federal Practice & Procedure Crim. § 667 (4th ed.) ("When a government agent applies for a search warrant, the affidavit or sworn testimony must establish the grounds for issuing the warrant. . . . The judicial officer may use common sense and draw reasonable inferences from the wording of an affidavit in the light of experience."). Moreover, Zavala has not made a showing that the officer's affidavit was false in this regard. Further, neither party indicated that an evidentiary hearing was needed to test the assertions. *See* Opp. at 25 ("Defendant has not requested an evidentiary hearing, and in any event none is required."); Transcript at 6:1-11, 24:1-9 (Court discussing its tentative view that officer's testimony was not needed as no credibility finding needed to be made). Finally, this Court is to accord the magistrate's finding of probable cause great deference. *United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007) ("A magistrate judge's finding of probable cause is entitled to great deference and this court will not find a search warrant invalid if the magistrate judge had a 'substantial basis' for concluding that the supporting affidavit established probable cause.' Furthermore, '[i]n borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it.'" (citations omitted) (first quoting *United States v. Clark*, 31 F.3d 831, 834 (9th Cir.1994), *cert. denied,* 513 U.S. 1119 (1995); then quoting *United States v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990)).

Accordingly, this Court finds that there was probable cause to search the residence.[5]

[5] In light of the Court's findings below, and given that the evidence at issue was found in the residence, the Court need not reach the question of whether there was probable cause to search the vehicle.

**B. The Warrant Fails for Overbreadth.**

Zavala argues that even if there was probable cause to search the location, some of the categories of items to be searched for in the search warrant were overbroad—that is, there was not probable cause to search for all of the items listed in these categories.[6] He specifically challenges Categories 3, 4, 5, 6, 7, and 9, enumerated below. The Government contends that these categories met the breadth requirement and the search warrant was therefore valid.

The Court finds that each of the challenged provisions run afoul of the breadth requirement.[7] The Court discusses each in turn. Before doing so, a description of the particular form of illegal gaming at issue is warranted. Law enforcement suspected Zavala of operating an illegal "fish" game. Per Velasquez's Statement of Probable Cause:

> A "fish" game is essentially a multi-player gambling machine disguised as a video arcade game on a table top. The game has six to eight control stations (with joy sticks) situated along the edge of the screen. Once the game is on, the screen lights up with a school of multi-colored fish of different size[s] and breeds. Each player feeds money into the machine (control station) and the objective was to shoot as many "swimming" fish as your credit allows. The more fish and the bigger fish you shoot, the more credits (money) you win.

Search Warrant and Affidavit at 13. And as the Government explained at the hearing, the fish game was operated by way of computer hardware and software. Transcript at 16:16-22.

The Court now turns to the categories of items in the search warrant, beginning with Categories 3 and 4. Category 3 authorizes a search for "any and all computer hardware," and Category 4 authorizes a search for "any and all computer software." These categories are plainly overbroad and therefore invalid. Although its opposition brief suggested that the Government wanted the Court to read a limitation into those broad categories, Opposition at 27, at the hearing, the Government clarified its position: Because Velasquez explained how these broad categories of evidence "tend to establish" illegal gambling casinos, a warrant authorizing a search for those broad

[6] At the hearing, the Court incorrectly referred to this concern as failing to meet the "particularity" requirement. As the parties correctly identified, the primary concern identified by Zavala is that the warrant fails the "breadth" requirement.

[7] In its supplemental briefs, the Government suggests that the Court's overbreadth concern only related to one or two categories in the warrant. As a review of the transcript makes clear, the Court provided the parties with Category 4 as an *example* of an overbroad category. Transcript at 5:9-13.

categories—that is, *all* computer hardware and *all* computer software—is not overbroad. Transcript at 19:12–25. This presents a classic overbreadth problem because probable cause does not exist to seize all items in these broad categories. *Spilotro*, 800 F.2d at 963 (describing the court's inquiry as "whether probable cause exists to seize all items of a particular type described in the warrant"). In fact, it is nearly axiomatic that computer hardware and software are not necessarily associated with criminal activity. Nor does anything in the search warrant or the affidavit suggests that all computer hardware and software found at the residence were necessarily associated with illegal gambling.

At the hearing, the Government asserted that the aim of these categories was the computer and hardware used to run the illegal "fish" game, Transcript at 5:24–25, 16:9–17:11; and these broad categories were permissible because it was impossible for an officer on the scene to determine which computer hardware and/or software was associated with illegal gambling. *Id.* at 22:10–18. This is contrary to governing law. "[G]eneric classifications are only acceptable when a more precise description is not possible." *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995). Just as in *Kow*, the Government could have made the description more precise, by doing what it sought to do in the hearing—limit the computer hardware and software to that used to operate the fish game at issue. For example, it could have authorized a search for "any and all computer hardware and software connected to illegal fish game console" or even "any and all computer hardware and software used to operate the illegal fish game console."

But it did not. Rather, it described a broad category of potentially innocent items. Just as in *Spilotro*, "As the warrants stand . . . they authorize wholesale seizures of entire categories of items not generally evidence of criminal activity, and provide no guidelines to distinguish items used lawfully from those the government had probable cause to seize." 800 F.2d at 964. As drafted, these categories are overbroad and invalid.

Category 5—covering "[a]ny and all computer related documentation" fails for the same reason. This is a generic classification where a more precise description—limiting the search to computer related documentation concerning the "fish" game—was possible.

Category 6—covering "any and all documents showing assets"—Category 7—covering "any and all documents"—and Category 9—covering "any and all printed documents" as well as all

"digital information that can be executed by a computer"—are also all plainly overbroad and invalid. Again, well-settled Ninth Circuit authority prohibits these broad categories under these circumstances. A seizure of all business documents is typically only permissible where the supporting affidavit establishes that the entire business is a sham or a scheme to defraud, or where it establishes that all of a business's records are likely to establish criminal activity. *Kow*, 58 F.3d at 427; *see also SDI Future Health*, 568 F.3d at 703–05 (discussing various categories within a search warrant). It follows that when searching a defendant's home, the only way a search for "all documents" could be justified is if the affidavit establishes that all of the defendant's documents—including his personal papers—are likely to establish criminal activity. Neither of the supporting affidavits accomplish this, and therefore these categories fail as overbroad.

For the reasons set forth above, the search warrant is overbroad and therefore invalid.

### C. The Good Faith Exception Does Not Apply.

Because the warrant was facially invalid, the Court finds that the good faith exception is inapplicable.[8] The good faith exception applies "[w]hen officers act in reasonable reliance on a search warrant issued by a neutral magistrate but ultimately found to be invalid." *Ramos*, 923 F.2d at 1353. However, "[w]hen a search warrant is facially deficient, the *Leon* exception will not apply to stave off the exclusionary rule." *Id*.

An officer relying on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" cannot act in objective good faith. *United States v. Hove*, 848 F.2d 137, 139 (9th Cir. 1988) (quoting *Leon*, 468 U.S. at 923).

Here, the challenged categories are so plainly overbroad and lacking indicia of probable cause that no officer could in objective good faith rely on them. The good faith exception therefore does not apply.

[8] The Court notes that its determination does not require a finding that the officer's statement is not credible or that he engaged in any other misconduct, and the Court therefore declines to make any such finding. For this reason, the Court agreed with the parties that an evidentiary hearing (to which the Government objected) was unnecessary.

**D. The Search Warrant Is Not Severable.**

In light of the Court's concerns about overbreadth, the Government offered that the Court had the power to sever the portions of the search warrant it found invalid and uphold the seizure of the firearms and ammunition pursuant to the indisputably valid portion of the search warrant. Gov. Brief at 6–7.[9] Zavala argues that severance would be inappropriate as the overbroad portions of the warrant authorize an illegal search. Def. Brief at 7–8.

This Court may not sever the invalid portions of a search warrant where the valid portions are a "relatively insignificant part" of an otherwise invalid search warrant. *In re Grand Jury Subpoenas*, 926 F.2d at 858. Here, although the valid categories of the search warrant are identifiable, *see Sears*, 411 F.3d at 1130, these valid categories are a relatively insignificant part of this otherwise invalid search warrant. *See In re Grand Jury Subpoenas*, 926 F.2d at 858. In contrast, the invalid categories appear to be the focus and make up the lion's share of the warrant. *See SDI Future Health*, 568 F.3d at 707. Whereas the invalid categories authorize a search for *all* computer hardware, *all* computer software, *all* computer-related documentation, and *all* documents, the valid categories only authorize a search for slot machines, identifying documents, cell phones, firearms, and ammunition. In addition, there are only four arguably valid categories—in contrast to seven invalid categories. These facts are most similar to the cases where severance was found inappropriate. *Compare Spilotro*, 800 F.2d at 967–68 (declining to apply the severance doctrine where the arguably valid authorization to search for scanning devices, cash, and keys to safety deposit boxes were "a relatively insignificant part of [a] sweeping search for evidence of any violation of . . . thirteen statutes"); *and Kow*, 58 F.3d at 428 (finding severance not available where only one of fourteen categories in the search warrant was arguably not overbroad) *and United States v. Embry*, 625 Fed. App'x 814, 817 (9th Cir. 2015) (unpublished) (finding that severance could not be applied where the invalid portions were either

---

[9] The Government's supplemental briefing states that this Court's tentative position at the hearing was that the search warrant was supported by probable cause, so "[t]he Court's remaining concern is a narrow one: whether, if the court concludes that Item 3 is overbroad and further concludes . . . that the good faith exception does not apply, the appropriate remedy is wholesale invalidation of the warrant and suppression of all evidence seized pursuant [to] it." Gov. Brief at 1; *see also* Gov. Supp. Brief at 1 (identifying Item 4 as the Court's "illustrative example of an overbroad provision"). But this Court's overbreadth concerns were not, and are not, limited to either or both of those paragraphs.

inseparable from or predominate over the valid portions) *with Gomez Soto*, 723 F.2d at 654 (applying severance doctrine where only one of thirteen categories in the warrant was found invalid); *and Sears*, 411 F.3d at 1131 (considering the relative size of the valid and invalid portions of the search warrant at issue and finding severance warranted because the search for cocaine and narcotics paraphernalia was the focus and the majority of the search); *and SDI Future Health*, 568 F.3d at 707 (finding severance appropriate because only five of the twenty-four categories in the search warrant were invalid and "the lion's share of the categories did not violate the Fourth Amendment"); *and In re Grand Jury Subpoenas,* 926 F.2d at 858 (finding severance appropriate where the search warrant at issue was overbroad only as to nine of twenty-two persons or entities).

Because the invalid portions of the search warrant are not a relatively insignificant part of the search warrant, severance is not appropriate.

Accordingly, the Motion is GRANTED.

## IV. <u>Conclusion</u>

For the foregoing reasons, the Court GRANTS the Motion to Suppress. The parties are ordered to meet and confer and file a joint statement with the Court by Thursday, July 23, 2026, regarding further proceedings in light of the upcoming trial date.

IT IS SO ORDERED.

Dated: July 17, 2026.

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge